## RAKE ET AL. *v.* WADE, TRUSTEE

No. 92–621.   Argued March 22, 1993—Decided June 7, 1993

*David A. Carpenter* argued the cause for petitioners. With him on the briefs was *J. Edwin Poston.*

*Lawrence A. G. Johnson* argued the cause and filed a brief for respondent.

*Ronald J. Mann* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Acting Solicitor General Bryson, Assistant Attorney General Gerson, Deputy Solicitor General Wallace,* and *Alfred J. T. Byrne.*

JUSTICE THOMAS delivered the opinion of the Court.

This case requires us to decide whether Chapter 13 debtors who cure a default on an oversecured home mortgage

pursuant to § 1322(b)(5) of the Bankruptcy Code, 11 U. S. C. § 1322(b)(5), must pay postpetition interest on the arrearages. We conclude that the holder of the mortgage is entitled to such interest under §§ 506(b) and 1325(a)(5) of the Code.

## I

Petitioners Donald and Linda Rake, petitioners Earnest and Mary Yell, and respondents Ronnie and Rosetta Hannon[1] initiated three separate Chapter 13 bankruptcy proceedings in the Northern District of Oklahoma. In each case the debtors were in arrears on a long-term promissory note assigned to respondent William J. Wade, trustee (hereinafter respondent). The notes allowed a $5 charge for each missed payment but did not provide for interest on arrearages. Payment on the notes was secured by a first mortgage on the principal residence owned by each pair of debtors. The mortgage instruments provided that in the event of a default by the debtors, the holder of the note (now respondent as assignee) had the right to declare the remainder of indebtedness due and payable and to foreclose on the property. Because the value of the residence owned by each pair of debtors exceeded the outstanding balance on the corresponding notes, respondent was an oversecured creditor.

In their Chapter 13 plans the debtors proposed to pay directly to respondent all future payments of principal and interest due on the notes. The plans also provided that the debtors would cure the default on the mortgages by paying off the arrearages, without interest, over the terms of the plans. Respondent objected to each plan, on the ground that he was entitled to attorney's fees and interest on the arrearages. The Bankruptcy Court overruled respondent's objections, and respondent appealed to the District Court for the Northern District of Oklahoma, which consolidated the

---

[1] Because the Hannons did not join the petition for certiorari, they are respondents in this Court under this Court's Rule 12.4.

cases and affirmed. The District Court held that the Chapter 13 provisions relating to the "curing of defaults"—11 U. S. C. §§ 1322(b)(2) and 1322(b)(5)—"do not alter the contract between the parties governing such matters as interest, if any, to be paid on arrearage," and that allowing interest on arrearages would be "improper," since the notes did not provide for it. App. to Pet. for Cert. A–24.

The United States Court of Appeals for the Tenth Circuit reversed. *Wade* v. *Hannon,* 968 F. 2d 1036 (1992). The court held that § 506(b) of the Bankruptcy Code, as interpreted in *United States* v. *Ron Pair Enterprises, Inc.,* 489 U. S. 235 (1989), entitles an oversecured creditor to postpetition interest on arrearages and other charges paid off under a Chapter 13 plan, "even if the mortgage instruments are silent on the subject and state law would not require interest to be paid." 968 F. 2d, at 1042. The Tenth Circuit relied in part on the Sixth Circuit's decision in *In re Colgrove,* 771 F. 2d 119 (1985), which reached the same result but rested its decision on § 1325(a)(5) as well as § 506(b) of the Bankruptcy Code. Four other Courts of Appeals have held that under the "cure" and "modification" provisions of § 1322(b) a mortgagee is not entitled to interest on home mortgage arrearages.[2] We granted certiorari to resolve the conflict. 506 U. S. 972 (1992).

## II

Petitioners' Chapter 13 plans proposed to "cure" the defaults on respondent's oversecured home mortgages[3] by establishing repayment schedules for the arrearages. Three interrelated provisions of the Bankruptcy Code determine

---

[2] *In re Laguna,* 944 F. 2d 542, 545 (CA9 1991), cert. denied, 503 U. S. 966 (1992); *Landmark Financial Services* v. *Hall,* 918 F. 2d 1150, 1153–1155 (CA4 1990); *Appeal of Capps,* 836 F. 2d 773, 776 (CA3 1987); *In re Terry,* 780 F. 2d 894, 895–896 (CA11 1985).

[3] By "home mortgage" we mean an allowed claim secured only by a security interest in the debtor's principal residence. See 11 U. S. C. § 1322(b)(2).

whether respondent is entitled to interest on those arrearages: §§ 506(b), 1322(b), and 1325(a)(5).

Section 506(b), which applies to Chapter 13 proceedings pursuant to 11 U. S. C. § 103(a), provides that holders of oversecured claims are "allowed" postpetition interest on their claims.[4] In *Ron Pair* we held that the right to postpetition interest under § 506(b) is "unqualified" and exists regardless of whether the agreement giving rise to the claim provides for interest. 489 U. S., at 241. It is generally recognized that the interest allowed by § 506(b) will accrue until payment of the secured claim or until the effective date of the plan. See 3 Collier on Bankruptcy ¶ 506.05, p. 506–43, and n. 5c (15th ed. 1993) (hereinafter Collier). Respondent concedes, and his *amicus* the United States agrees, that because § 506(b) "has the effect of allowing a claim to the creditor, . . . the rights granted under Section 506(b) are relevant only until confirmation of the plan." Brief for United States as *Amicus Curiae* 11, n. 7. Accord, Tr. of Oral Arg. 24, 34. Petitioners also agree that § 506(b) applies only from the date of filing through the confirmation date. Brief for Petitioners 10, 13.

Two paragraphs of § 1322(b) are relevant here: §§ 1322(b)(2) and 1322(b)(5). Section 1322(b)(2) authorizes debtors to modify the rights of secured claim holders, but it provides protection for home mortgage lenders by creating a specific "no modification" exception for holders of claims secured only

---

[4] Section 506(b) states: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." Under this provision, an oversecured creditor is entitled to postpetition interest on its claim only "to the extent that such interest, when added to the principal amount of the claim," does not "exceed the value of the collateral." *United Savings Assn. of Texas* v. *Timbers of Inwood Forest Associates, Ltd.*, 484 U. S. 365, 372 (1988).

by a lien on the debtor's principal residence.[5]  Section 1322(b)(5) expressly authorizes debtors to cure any defaults on a long-term debt, such as a mortgage, and to maintain payments on the debt during the life of the plan.[6]  Under § 1322(b)(5), a plan may provide for the curing of any defaults and the maintenance of payments on a long-term debt "notwithstanding" § 1322(b)(2)'s prohibition against modifications of the rights of home mortgage lenders.

The final provision bearing on this case—§ 1325(a)(5)—states that "with respect to each allowed secured claim provided for by the plan," one of three requirements must be satisfied before the plan may be confirmed: (1) the holder of the claim has accepted the plan, § 1325(b)(5)(A); (2) the debtor surrenders the property securing such claim to the secured creditor, § 1325(a)(5)(C); or (3) the holder of the secured claim retains the lien securing such claim, § 1325(a)(5)(B)(i), and "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim," § 1325(a)(5)(B)(ii).  Thus, unless the creditor accepts the plan or the debtor surrenders the collateral to the creditor, § 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim, including deferred cash payments in satisfaction of the claim, see 5 Collier ¶ 1325.06[4][b][ii], must equal the present dollar value of such claim as of the confirmation date.   Petitioners, respondent, and the United States agree that "[s]ection 1325(a)(5)(B)

---

[5] Section 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

[6] Section 1322(b)(5) states that "notwithstanding" § 1322(b)(2), a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

requires all holders of allowed secured claims to be paid the present value of such claims, which implies the payment of interest." Reply Brief for Petitioners 5. Accord, Brief for Respondent 16–17; Brief for United States as *Amicus Curiae* 11–12, and n. 8.

## III

Although petitioners and respondent generally agree as to the requirements of §§ 506(b) and 1325(a)(5), petitioners argue that those provisions do not apply when the debtor cures a default on a home mortgage under § 1322(b)(5). Some courts have construed the "cure" and "modification" provisions of § 1322(b) so broadly as to render §§ 506(b) and 1325(a)(5) inapplicable to the curing of defaults on home mortgages. *E. g., Landmark Financial Services* v. *Hall,* 918 F. 2d 1150, 1153–1155 (CA4 1990). Petitioners contend that this is precisely what § 1322(b) requires.

## A

Turning first to § 506(b), petitioners concede that respondent holds an oversecured claim, which includes arrearages[7] and that "'an oversecured creditor is ordinarily entitled to an allowance for postpetition interest on its secured claim under Chapter 13.'" Reply Brief for Petitioners 2 (quoting *In re Laguna,* 944 F. 2d 542, 544 (CA9 1991) (footnote omitted), cert. denied, 503 U. S. 966 (1992)). They argue, however, that § 1322(b)(5) "operate[s] to the exclusion of the provisions of § 506(b)," Brief for Petitioners 9, and that § 506(b) thus "does not require the payment of . . . preconfirmation interest on home mortgage arrearages in Chapter 13 bankruptcy proceedings," Reply Brief for Petitioners 1. Because § 1322(b)(5) does not expressly negate § 506(b), petitioners suggest that "'[d]espite some broad language in *Ron Pair,*

---

[7] Respondent is the holder of an allowed oversecured claim in each pair of petitioners' cases, and this claim includes "arrearages on the note and mortgage." App. 6, 22.

. . . § 506(b) is inapplicable in the context of [Chapter 13] mortgage cures.'" Brief for Petitioners 13 (quoting *Hall, supra,* at 1154).

Petitioners' interpretation of §§ 506(b) and 1322(b)(5) does not comport with the terms of those provisions. Under § 506(b) the holder of an oversecured claim is allowed interest on his claim to the extent of the value of the collateral. Section 506(b) "directs that postpetition interest be paid on *all* oversecured claims," *Ron Pair,* 489 U. S., at 245 (emphasis added), and, as the parties acknowledge, such interest accrues as part of the allowed claim from the petition date until the confirmation or effective date of the plan. See *supra,* at 468. The arrearages owed on the mortgages held by respondent are plainly part of respondent's oversecured claims. Under the unqualified terms of § 506(b), therefore, respondent is entitled to preconfirmation interest on these arrearages. Where the statutory language is clear, our "'sole function . . . is to enforce it according to its terms.'" *Ron Pair, supra,* at 241 (quoting *Caminetti* v. *United States,* 242 U. S. 470, 485 (1917)). Accord, *Connecticut Nat. Bank* v. *Germain,* 503 U. S. 249, 253–254 (1992).

Section 1322(b)(5), on the other hand, states that a Chapter 13 plan may "provide for the curing of any default and the maintenance of payments" on certain claims. While § 1322(b)(5) authorizes a Chapter 13 plan to provide for payments on arrearages to effectuate a cure after the effective date of the plan, nothing in that provision dictates the terms of the cure. In particular, § 1322(b)(5) provides no indication that the allowed amount of the arrearages cured under the plan may not include interest otherwise available as part of the oversecured claim under § 506(b). We generally avoid construing one provision in a statute so as to suspend or supersede another provision. To avoid "deny[ing] effect to a part of a statute," we accord "'significance and effect . . . to every word.'" *Ex parte Public Nat. Bank of New York,* 278 U. S. 101, 104 (1928) (quoting *Market Co.* v. *Hoffman,* 101

U. S. 112, 115 (1879)). Construing §§ 506(b) and 1322(b)(5) together, and giving effect to both, we conclude that § 1322(b)(5) authorizes a debtor to cure a default on a home mortgage by making payments on arrearages under a Chapter 13 plan, and that where the mortgagee's claim is oversecured, § 506(b) entitles the mortgagee to preconfirmation interest on such arrearages.

## B

Petitioners make virtually the same argument with respect to postconfirmation interest under § 1325(a)(5). Petitioners concede that under § 1325(a)(5)(B)(ii) secured creditors are entitled to the "present value of [their] claims, which implies the payment of interest." Reply Brief for Petitioners 5.[8] Petitioners contend, however, that § 1325(a)(5)(B)(ii) "applies only to secured claims which have been modified in the Chapter 13 plan, and which, by reason of Section 1322(b)(2), may not include home mortgages." *Ibid.* Since nothing in the Code states that § 1325(a)(5) applies only to "modified" claims, petitioners turn to those Court of Appeals decisions that have held that "the legislative history indicates that § 1322(b) was intended to create a special exception to § 1325(a)(5)(B)." *In re Terry*, 780 F. 2d 894, 896–897 (CA11 1985). Accord, *In re Laguna, supra,* at 544–545; *Hall*, 918 F. 2d, at 1154–1155; *Appeal of Capps*, 836 F. 2d 773, 776 (CA3 1987).

---

[8] When a claim is paid off pursuant to a stream of future payments, a creditor receives the "present value" of its claim only if the total amount of the deferred payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments. This generally involves a determination of an appropriate discount rate and a discounting of the stream of deferred payments back to the present dollar value of the claim at confirmation. See 5 Collier ¶ 1325.06[4][b][iii][B]. Because the issue is not presented in this case, we express no view on the appropriate rate of interest that debtors must pay on arrearages cured pursuant to § 1322(b)(5).

Petitioners' interpretation of §§ 1322(b) and 1325(a)(5) is refuted by the plain language of the Code. Section 1325(a)(5) applies by its terms to "each allowed secured claim provided for by the plan." The most natural reading of the phrase to "provid[e] for by the plan" is to "make a provision for" or "stipulate to" something in a plan. See, *e. g.*, American Heritage Dictionary 1053 (10th ed. 1981) ("provide for" defined as "to make a stipulation or condition"). Petitioners' plans clearly "provided for" respondent's home mortgage claims by establishing repayment schedules for the satisfaction of the arrearages portion of those claims. As authorized by § 1322(b)(5), the plans essentially split each of respondent's secured claims into two separate claims—the underlying debt and the arrearages. While payments of principal and interest on the underlying debts were simply "maintained" according to the terms of the mortgage documents during the pendency of petitioners' cases, each plan treated the arrearages as a distinct claim to be paid off within the life of the plan pursuant to repayment schedules established by the plans. Thus, the arrearages, which are a part of respondent's home mortgage claims, were "provided for" by the plans, and respondent is entitled to interest on them under § 1325(a)(5)(B)(ii).[9]

---

[9] Petitioners' argument that "modified" claims cannot include home mortgage claims that have been "cured" does not withstand scrutiny. When a plan cures a default and reinstates payments on a claim, the creditor's contractual rights arising from the default—which in this case included the right to declare all payments due and payable, accelerate the debt, possess the property, collect rents generated by the property, and foreclose on the property, see App. 14–15, 29–30—are abrogated and therefore "modified." These modifications are allowed under § 1322 (b)(5) "notwithstanding" the fact that § 1322(b)(2) generally prohibits the modification of the rights of home mortgage holders. Petitioners' construction of § 1322(b)(2) also leads to the incongruous result that only home mortgage claims would be denied the benefits of § 1325(a)(5). By prohibiting modifications of the rights of holders of home mortgage claims, Congress could not have intended, in our view, to afford the holders of these claims *less* protection than the holders of other secured claims.

Other provisions of Chapter 13 containing the phrase "provided for by the plan" make clear that petitioners' plans provided for respondent's home mortgage claim. See *United Savings Assn. of Texas* v. *Timbers of Inwood Forest Associates, Ltd.*, 484 U. S. 365, 371 (1988) (statutory terms are often "clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes [their] meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law") (citation omitted). Title 11 U. S. C. § 1328(a) (1988 ed., Supp. III), for example, utilizes the phrase "provided for by the plan" in dealing with the discharge of debts under Chapter 13.[10] As used in § 1328(a), that phrase is commonly understood to mean that a plan "makes a provision" for, "deals with," or even "refers to" a claim. See 5 Collier ¶ 1328.01, at 1328–9. In addition, § 1328(a) unmistakably contemplates that a plan "provides for" a claim when the plan cures a default and allows for the maintenance of regular payments on that claim, as authorized by § 1322(b)(5). Section 1328(a) states that "all debts provided for by the plan" are dischargeable, and then lists three exceptions.[11] One type of claim that is "provided for by the plan" yet excepted from discharge under § 1328(a) is

---

[10] Section 1328(a) provides:

"As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

"(1) provided for under section 1322(b)(5) of this title;

"(2) of the kind specified in paragraph (5) or (8) of section 523(a) or 523(a)(9) of this title; or

"(3) for restitution included in a sentence on the debtor's conviction of a crime."

[11] Section 1328(a)(1) refers to "debts" rather than claims, but a debt under the Code is simply "liability on a claim." 11 U. S. C. § 101(12) (1988 ed., Supp. III).

a claim "provided for under section 1322(b)(5) of this title." § 1328(a)(1). If claims that are subject to § 1322(b)(5) were not "provided for by the plan," there would be no reason to make an exception for them in § 1328(a)(1). Under § 1325(a)(5), therefore, respondent is entitled to the present value of arrearages paid off under the terms of the plans as an element of an "allowed secured claim provided for by the plan."

## IV

We hold that respondent is entitled to preconfirmation and postconfirmation interest on arrearages paid off under petitioners' plans.[12] We therefore affirm the judgment of the Court of Appeals.

*So ordered.*

---

[12] Petitioners suggest that by allowing postpetition interest on arrearages "and other charges," the Tenth Circuit misconstrued *United States* v. *Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989). Brief for Petitioners 21. We disagree. *Ron Pair* held that under § 506(b) a creditor is entitled to postpetition interest on its "oversecured claim." 489 U.S., at 241. The arrearages portion of respondent's oversecured claims in this case included the amounts past due on the notes and the "other charges" to which the Tenth Circuit referred. App. 6, 22.