## In the Matter of Ivan H. BOHLING, Debtor.

**Bankruptcy No. BK96–42102.**

United States Bankruptcy Court, D. Nebraska.

May 19, 1998.

---

Richard J. Butler, Lincoln, NE, Chapter 7 Standing Trustee.

John J. Jolley, Jr., Omaha, NE, for First National Bank of Wahoo.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This Chapter 7 case is before the court for a determination of whether the First National Bank of Wahoo (the "Bank") is entitled to interest at the default rate on its secured claim. I sustain the Chapter 7 Trustee's Objection to the Bank's claim, concluding that the Bank is not entitled to interest at the default rate.

### Facts

This bankruptcy case was filed on December 3, 1996, under Chapter 11 of the Bankruptcy Code. The Bank is a secured creditor holding a trust deed to the debtor's commercial, residential, and rental property, and a perfected security interest in debtor's business inventory, accounts, and equipment. It is undisputed that the Bank is over secured; the amount of the debt is substantially less than the value of collateral.

The debtor was current on the Bank loan on the petition date, but defaulted a short time later on December 24, 1996, by failing to make a payment. On March 12, 1997, the Chapter 11 case was converted to Chapter 7. On March 27, 1997, the Chapter 7 trustee sold the debtor's commercial real estate and some of the debtor's personal property. Since the time of sale, the proceeds of sale, $55,000.00, have been held in the trustee's bank account subject to the security interest of the Bank.

Under the Bank's loan documents, interest accrues at 9.75% per annum, increasing to 19% per annum in the event of a default. The loan documents also provide that the Bank may collect costs and attorney fees. The Bank asserts that it is entitled to an allowed secured claim in the amount of the aggregate of:

1. The unpaid balance of the loan, including interest at 9.75%, as of the petition date.
2. Interest at 9.75% from the petition date until December 24, 1996, which was the date of the debtor's post-petition default in payment on the loan.
3. Interest at the 19% default rate from December 24, 1996, until paid.
4. Costs and attorney fees.

The Chapter 7 trustee concedes that the Bank is entitled to payment of principal and interest at the non-default rate of 9.75%, and to reasonable costs, including attorney fees. The trustee asserts, however, that the Bank is not entitled to interest at the 19% default rate, and that attorney fees incurred in seeking to collect interest at the default rate should not be allowed.

### Law

■ The legal issue is whether the Bank is entitled to post-petition interest at the default rate provided in its loan documents. Under section 502(b)(2) of the Bankruptcy Code, a claim for unmatured interest is not allowed. However, to the extent that a claim is over collateralized, section 506(b) allows post-petition interest and any reasonable fees, costs, or charges provided for under the loan agreement. The United States Supreme Court in *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), held that under section 506(b), as a matter of federal law, an over secured creditor is entitled to interest whether the creditor's claim is consensual or not. However, the Court did not state how the appropriate rate of interest is determined under section 506(b).

The Fifth and Seventh Circuit Courts of Appeal have stated that in determining the appropriate interest rate under section 506(b), there is a presumption in favor of the contract rate of interest, including any default rate, subject to equitable considerations as to whether to apply the non-default contract rate or the default rate. *See In re Terry Ltd. Partnership*, 27 F.3d 241, 243 (7th Cir.1994), *cert. denied* by *Invex Holdings, N.V. v. Equitable Life Ins. Co. of Iowa*, 513 U.S. 948, 115 S.Ct. 360, 130 L.Ed.2d 313

(1994); *In re Laymon*, 958 F.2d 72, 75 (5th Cir.1992), *rehearing denied*, 964 F.2d 1145, *cert. denied* by *Crozier v. Bradford*, 506 U.S. 917, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992).

In *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), the Supreme Court held that debtors are required to pay interest on arrearages when they cure defaults under section 1322(b)(5), notwithstanding state laws which prohibit a creditor from charging interest on past due interest charges. Sections 1123(d), 1222(d), and 1322(e), of the Bankruptcy Code were added by the Bankruptcy Reform Act of 1994 in response to the United States Supreme Court's ruling in *Rake*. These new sections provide that if a plan proposes to cure a default, the amount necessary to cure the default is determined in accordance with the underlying agreement and applicable non-bankruptcy law. This means that, in curing payment defaults, a debtor will have to pay interest at a contractual default rate if it is enforceable under applicable non-bankruptcy laws. These sections are not applicable to this case under Chapter 7, because the debtor is not seeking to cure defaults and to obtain confirmation of a plan.

■ In summary, although unmatured interest is not generally allowed in bankruptcy cases, there is a statutory exception in section 506, which allows a claim for interest to an over secured creditor. Under *Ron Pair* and *Rake*, it is clear that the interpretation of section 506 is a question of federal law and that contrary state laws are preempted. Under *Ron Pair* and *Rake*, as elaborated by the Fifth and Seventh Circuit Courts of Appeal, *supra*, the interest rate payable to the creditor is presumptively the contract rate, including the contractual default rate. In determining whether to allow interest at the base contract rate or the default rate, the trial court should consider the equities of the case. These general rules are superseded by the recent amendments which added sections 1123(d), 1222(d) and 1322(e), only in the narrow context of confirmation proceedings.

### Discussion

*Interest Rate*

In the context of a Chapter 11, 12 or 13 confirmation, it is clear that the Bank would

be entitled to interest at the default rate under the recently added sections 1123(d), 1222(d) and 1322(e). But this is a Chapter 7 liquidation case and those sections of the Bankruptcy Code are not applicable. Here, the court must determine, as a matter of federal common law, what interest rate should be allowed. Although the contract between the parties is the obvious choice or source of the interest rate, and the contract is presumed to govern, the bankruptcy court has discretion to be guided by equitable considerations.

■ In balancing, the equities in this case, I conclude that the Bank should be allowed interest at the base contract rate of 9.75% and not at the 19% default rate.

First, allowance of interest at the default rate is inherently unfair because, in theory, it permits double recovery by the Bank. Under state law, attorney fees are not allowed. However, under state law a lender is permitted to recover interest at the default rate, thus being reimbursed by the extra interest for the costs of foreclosure and collection. In bankruptcy cases, as a matter of federal law, the over secured creditor may recover reasonable costs and expenses, including attorney fees provided for in the loan documents. State laws which disallow recovery of attorney fees are preempted by federal law. In bankruptcy, the over secured creditor is fully and fairly compensated by allowance of its claim for principal, interest at the base contract rate, plus reasonable costs and expenses, including attorney fees. It would be inequitable to allow interest at the default rate when the secured creditor is fully protected by section 506 which allows the over secured creditor to recover its costs and expenses, including attorney fees.

Second, this is a Chapter 7 liquidation case. An important policy consideration is the fair and equitable distribution of assets to creditors. That policy is undercut if secured creditors are allowed interest at a default rate, because it reduces the amount paid to unsecured creditors and pays secured creditors more than they could recover under

state law. Under Nebraska law, the claim for attorney fees would not be allowed. From an equitable view point, there is no justification for bestowing a federal preference upon the over secured creditor, when unsecured creditors are not paid in full.

Third, the default rate in this case is nearly twice the base contract rate. Although the 19% rate is enforceable and not a penalty, it will provide the Bank an extraordinary high yield on its loan under circumstances where unsecured creditors will not even be paid the amount of their allowed claims.

Fourth, on the facts of this case, the Bank is substantially over secured and it has experienced virtually no risk of loss on the loan— it has simply been delayed from enforcing its loan. Since March of 1997, when the Chapter 7 trustee sold the Bank's collateral, the proceeds of sale have been held in the Chapter 7 trustee's bank account. Since March, the Bank has been absolutely assured of payment in full with no risk of loss due to a reduction in the value of collateral or the loss of collateral. Furthermore, the Bank has never filed a motion for relief from the automatic stay under § 362, or for adequate protection under § 363.

Fifth, the Bank's loan was not in default on the day this bankruptcy case was filed.

Finally, this dispute does not arise in the usual context where collateral is sold with the proceeds turned over to a secured creditor. The Chapter 7 trustee obtained court approval, after notice and opportunity to object, to sell some of the property securing the Bank's loan in an attempt to marshal assets and maximize the return to the bankruptcy estate.[1] The trustee specifically sought and obtained court approval to purchase the Bank's position under the loan documents and to obtain an assignment of the Bank's loan documents.

*Attorney Fees*

■ The Chapter 7 trustee objects to allowance of attorney fees incurred by the Bank in seeking the default rate of interest.

---

1. By purchasing the Bank's position and taking an assignment of all rights under the loan documents, the Chapter 7 trustee became entitled to enforce the Bank's claim against a co-obligor and the collateral pledged by a co-obligor.

On December 3, 1997, when the Chapter 7 trustee requested a payoff amount from the Bank, the Bank sought a total of $1,483.23 in costs and attorney fees. It was at this time that the Chapter 7 trustee determined that the Bank was seeking interest at the default rate. Subsequently, the Bank incurred additional legal fees in asserting interest at the default rate, and the Bank now seeks a total of $2,273.19 in costs and attorney fees. The Bank thus seeks a total of $789.96 in costs and attorney fees associated with seeking the default rate of interest.

I conclude that 3 hours is a reasonable amount of time at a rate of $90/hour for the Bank's attorneys to have spent on asserting the Bank's right to the default interest rate. In addition, I conclude that expenses in the amount of $24.29 that were incurred by the Bank's attorneys in pursuing the default interest rate were reasonable. Thus, the Bank will be allowed a total of $294.29 in costs and attorney fees in pursuing the default rate of interest.

I further conclude that the hourly rates charged, and the time spent by the Bank's counsel for the remaining services provided with respect to the Bank's claim were reasonable, and should be included in the payoff amount.

IT IS THEREFORE ORDERED, that the Objection to the claim of First National Bank of Wahoo, (Claim No. 10) by the Chapter 7 trustee (Fil. # 124) is sustained. The Bank shall be allowed post-petition interest on its claim at a rate of 9.75% from the petition date until paid.

IT IS FURTHER ORDERED, that the Bank shall be allowed costs and attorney fees in the amount of $1,777.52.

IT IS SO ORDERED.