**In re Melissa WINTON, Debtor.**

**No. 99–33661.**

United States Bankruptcy Court,
D. Connecticut.

May 11, 2000.

Carl T. Gulliver, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, for Debtor.

Randall S. McHugh, Reiner, Reiner & Bendett, P.C., Farmington, CT, for objecting Creditor.

---

## MEMORANDUM OF DECISION ON CONFIRMATION OF CHAPTER 13 PLAN

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

The instant contested matter presents, in the context of plan confirmation, the question of whether a Chapter 13 plan must propose the payment of interest on a mortgage arrearage which is a component of a mortgagee's secured—albeit undersecured—claim. The Court concludes that payment of interest on a secured arrearage is a requirement of confirmation where, as here, the subject loan agreement was entered into on or before October 22, 1994. This Memorandum of Decision also addresses certain payment application issues between the parties.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. § 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(L).

### III. BACKGROUND

The Court finds the following facts from (i) its judicial notice of the files and records of this case, (ii) the oral stipulations of the parties at hearing, and (iii) an uncontested "Debtor's Proffer of Facts" filed February 2, 2000 (Doc. I.D. No. 38).

On or about February 5, 1990, the Debtor executed an Open–End Mortgage (the "Mortgage") in favor of Greentree Mortgage Corporation—predecessor in interest to GE Capital Mortgage Services, Inc. (hereafter, "GE")—thereby encumbering her two-family residence known as and numbered 26–28 Coram Street in the Town of Hamden, Connecticut (hereafter, the "Property"). The mortgage secured a Note dated February 5, 1990, pursuant to which the Debtor promised to pay the principal sum of $135,000.00 plus interest through installment payments over 30 years.

The Debtor eventually fell into default in payments under the Note, and she commenced the present Chapter 13 bankruptcy case on August 20, 1999 (hereafter, the "Petition Date"), through the filing of a voluntary petition. A proof of claim was filed on behalf of GE in this case asserting a total secured claim under the Note and Mortgage in the amount of $157,685.41. Of that amount, $34,837.00 was denominated as an "arrearage". The Debtor has objected to the *amount* of this proof of claim, but that matter has not yet come before the Court for decision.

On November 19, 1999, an Order (Doc. I.D. No. 24) (hereafter, the "Bifurcation Order") entered on the Debtor's "Motion to Determine Value of Claims and to Void Liens and Encumbrances" (Doc. I.D. Nos. 9–1, 9–2). The Bifurcation Order determined, *inter alia*, that the Petition Date value of the Property was $115,000.00. By virtue of the Bifurcation Order and the operation of Section 506(a), GE has a secured claim in this case in the amount of $115,000.00 (hereafter, the "Total Secured Claim"). The balance of GE's claim, as eventually allowed, is a general unsecured claim without priority.

On September 2, 1999, the Debtor filed a "Chapter 13 Plan" (hereafter, the "Initial Plan") (Doc. I.D. No. 6), which was then amended by a "First Amended Chapter 13 Plan" filed November 29, 1999 (Doc. I.D. No. 25), and subsequently by a "Second Amended Chapter 13 Plan" filed December 17, 1999 (hereafter, the "Plan" or "Second Amended Plan") (Doc. I.D. No. 26). On October 15, 1999, GE filed an "Objection to Plan" (Doc. I.D. No. 19), in which it objected to confirmation of the Initial Plan. As noted in the "Debtor's Memorandum in Support of Proposed Chapter 13 Plan"

(Doc. I.D. No. 33), the subsequent amendments to the Initial Plan did not fully resolve the issues raised by the Objection, and thus the Objection remains effective as to the Second Amended Plan, the confirmation of which is *sub judice*.

The Plan proposes to treat the secured claim of GE in the following fashion. First, the arrearage portion (hereafter, the "Arrearage") is to be completely satisfied and "cured", without interest, over the 60-month term of the Plan through "dividends" paid by the Chapter 13 Trustee from monthly plan payments made by the Debtor. The Plan directs that these Arrearage distributions be "credited by GE as payments of principal". Also, the Debtor proposes to "continue to pay current mortgage payments directly to [GE] . . . which include installments for current real estate taxes." In contrast to the Plan's treatment of the Arrearage, it does not direct how GE should apply the "current mortgage payments" (hereafter, the "Maintenance Payments").

## IV. DISCUSSION

The principal objection of GE to plan confirmation is its insistence that the Debtor pay interest on the Arrearage which she is proposing to cure over the 60-month term of the Plan. An additional legal question appears to be in issue between the parties, namely the proper application or allocation by GE of payments and Plan distributions as between interest and principal.

### A. Interest on Arrearage During Cure.

The question of whether a Chapter 13 plan must provide for interest on a mortgage arrearage cured overtime within the plan when the creditor's entire claim is "undersecured" has caused a split of authority among those courts which have considered it. *See generally, In re Morgan*, 225 B.R. 309, 311 (Bankr.E.D.Pa. 1998) (collecting cases). Although in 1994 Congress attempted to bring clarity and finality to the issue of arrearage interest through the enactment and codification of Section 1322(e), because that amendment applies only to loan agreements entered into after the legislation's October 22, 1994 effective date, this matter—relating to a 1990 Note and Mortgage—is governed by the Bankruptcy Code as interpreted by *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).

In this Court's opinion, *Rake* answers clearly the initial question raised in this matter. The Debtor's Plan must make provision for interest on any arrearage paid over time within the Plan to cure a default. This requirement springs directly from Code Section 1325(a)(5)(B)(ii), which states as a requisite for plan confirmation that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of [each secured claim provided for by the plan be] . . . not less than the allowed amount of such claim." In other words, a plan must insure that the present value of the stream of payments to be made on a claim "provided for by the plan" equal the amount of the claim. In the current economy this implies and compels the payment of interest on secured claims; and the Arrearage is a component of GE's Total Secured Claim. Neither the language of Section 1325(a)(5) nor that of the Supreme Court in *Rake* admits of any qualification to this requirement, whether due to (i) a creditor's "undersecured" status, (ii) the "cure and maintain" nature of the plan under Section 1322(b)(5), or (iii) the fact that the Debtor is the beneficiary of claim bifurcation or "lien stripping" under Section 506. Accordingly, because the Debtor's Plan does not pay interest on the Arrearage distributions for which it provides, it cannot be confirmed.

### B. Creditor's Application of Payments and Distributions.

Another aspect of the Plan's treatment of the Arrearage is its requirement that the Plan distributions—termed "dividends" by the Debtor—which GE will receive

from the Trustee in treatment of the Arrearage "be credited ... as payments of principal...."[1] The Debtor also argues that the Maintenance Payments be applied first to interest accruing on the Total Secured Claim at the contract rate, and then to the outstanding principal balance of the Total Secured Claim.[2]

Some preliminary observations and understandings may help to clarify the Court's analysis of the issues at play in this aspect of the pending matter. First, the Court notes that the Debtor's Plan treats GE's secured claim in the "cure and maintain" manner which is permitted under Section 1322(b)(5). Specifically, it "cures" by directing the Trustee to make distributions to GE to cure the Arrearage over time, and it "maintains" by obligating the Debtor to "continue [making] ... current mortgage payments directly to [GE]...."[3] As noted above, because of the Bifurcation Order, GE's Total Secured Claim in this case is in the judicially-determined initial *principal* amount of $115,000.00. The Arrearage is a *component of,* not independent of, the Total Secured Claim. The difference between the Arrearage and the Total Secured Claim (hereafter, the "Non–Arrearage Portion") is that portion of the Total Secured Claim which the Debtor intends to treat outside the Plan through the "maintenance of payments".

Under the foregoing circumstances, and pursuant to the Court's ruling on the payment of interest on the Arrearage, *see* Section IV.A. of this Memorandum of Decision, GE may accrue interest on the Arrearage post-confirmation, and then apply the Plan distribution(s) it receives from the Trustee first, to that accrued Arrearage interest, and then to the reduction of the "principal" balance[4] of that Arrearage. In like manner, GE may accrue interest[5] on the principal balance of the Non–Arrearage Portion; and consequently, may apply the Maintained Payments it receives first, to that accrued interest on the Non–Arrearage Portion, and then to the reduction of principal of the Non–Arrearage Portion.

## V. CONCLUSION

For the foregoing reasons, confirmation of the Debtor's Second Amended Chapter 13 Plan shall be DENIED by separate order.

## ORDER ON CONFIRMATION OF CHAPTER 13 PLAN

The above-captioned contested matter having come on for hearing after due notice; and the Court having this day issued its Memorandum of Decision on Confirma-

---

1. Technically, the Court need not opine on this issue since its determination on arrearage interest payment is alone sufficient to preclude confirmation. However, because the Court has already considered the payment application issues in the overall resolution of the matter before it, and that analysis may serve to enlighten the parties further and avoid needless effort in the preparation and prosecution of any future amendment of the plan, this discussion is included in this Memorandum of Decision.

2. This argument is made in the "Debtor's Memorandum in Support of Proposed Chapter 13 Plan", but is not a term of the Plan under consideration by the Court.

3. Section 1322(b)(5) permits the "maintenance of payments"—which this Court con-

strues to mean the continuation of payments in the same dollar amounts as were called for under the subject loan documents. Thus, if under the Note the Debtor's monthly payment to GE is $1500.00, then that is the amount which must be "maintained" by the Debtor during the Plan pursuant to Section 1322(b)(5).

4. The "principal" balance of the Arrearage—as that phrase is used by this Court—is not composed entirely of principal. It includes *all* of the components of the Arrearage, *e.g.* the interest portion of missed monthly payments, the principal portion of missed monthly payments, late charges, etc.

5. The Court expresses no opinion as to the interest rate—contract, judicially-determined, or other—at which interest is to accrue.

tion of Chapter 13 Plan, in accordance with which

**IT IS HEREBY ORDERED** that the Objection of creditor GE Capital Mortgage Services, Inc. (Doc. I.D. No. 19) is **SUSTAINED,** and confirmation of the Debtor's Second Amended Chapter 13 Plan (Doc. I.D. No. 26) is **DENIED.**