**In re Ivellis TRABAL, Debtor.**

**No. 00–33323(NLW).**

United States District Court,
D. New Jersey.

Sept. 13, 2000.

Herbert B. Raymond, Orange, NJ, for Debtor, Ivellis Trabal.

Joel Ackerman, Zucker, Goldberg & Ackerman, Mountainside, NJ, for Creditor, Chase Mortgage Co., West.

## OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

This matter is before the Court on a motion by the Debtor, Ivellis Trabal, objecting to the proof of claim by Chase Mortgage Company West. For the reasons set forth below, the Court denies Trabal's objection and finds in favor of Chase Mortgage Company West.

The Court has jurisdiction pursuant to 11 U.S.C. § 1334 and the Standing Order of Reference for the United States District Court for the District of New Jersey, dated July 23, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## STATEMENT OF FACTS

On April 3, 2000 Ivellis Trabal ("Trabal") filed for relief under Chapter 13 of the Bankruptcy Code. At the time she commenced her case, Trabal was in arrears on her mortgage payments to Chase

Mortgage Company West f/k/a Mellon Mortgage Company ("Chase"). In her Chapter 13 plan, the debtor estimates her mortgage arrears at $4,600.00, and proposes to cure the arrears over the sixty (60) month plan.

Chase filed a proof of claim, which identified the arrears as amounting to $6,207.12. It identified the components of the arrears as follows:

| | |
|---|---|
| Regular Monthly P & I Installments from November 1999 through April 2000 | $1,767.90 |
| Regular Monthly Escrow Installments from November 1999 through April 2000 | $1,198.76 |
| Late Charges | $ 88.38 |
| Pre-petition Legal Fees | $1,750.00 |
| Bankruptcy Fees (Property Inspection) | $ 565.50 |
| NSF Fee | $ 10.27 |
| Interest Accruing at the Rate of 8.625% on Pre–Petition Arrears | $ 826.81 |
| Total | $6,207.12 |

Trabal objects to the inclusion of $826.81 in interest as part of the arrears claim. She contends that the language of the mortgage does not explicitly provide for interest on arrears in a bankruptcy case, and further, no provision of the mortgage could reasonably be construed to provide for such interest. Chase notes, however, that the mortgage provides for certain expenditures to become part of the mortgage debt, and further provides for the accrual of interest on such debt. Chase points to the following language on the first page of the mortgage:

The debt is evidenced by the Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the monthly payments, with the full debt, if not paid earlier, due and payable on December 1, 2011. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the note with interest, and all renewals, extensions and modifications of the Note; (b) *the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of the Security Instrument.* (emphasis supplied).

Paragraph seven of the mortgage provides in pertinent part:

7. *Protection of Lender's Rights in the Property.* If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the property (such as a proceeding in bankruptcy, probate, for condemnation for forfeiture or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the property and Lender's rights in the Property. Lender's actions may include paying any sum secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so. "*Any amounts disbursed by the Lender under this paragraph seven shall become additional debt of the Borrower*

*secured by this Security Agreement. Unless Borrower and Lender agree top some other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment."* (emphasis supplied).

Applying this language to the expenses it incurred, Chase concluded that the following items were expenses on which interest could be calculated:

| | |
|---|---|
| Pre-petition Legal Fees | $1,750.00 |
| Bankruptcy Fees (Property Inspection) | $ 565.50 |
| NSF Fee | $ 10.27 |
| Escrow Advances | $1,198.76 |
| Total | $3,524.03 |

As set forth in the amortization schedule annexed as Exhibit B to its opposition, Chase concludes that total interest on these items over the life of the sixty month plan, equals $826.81.

### DISCUSSION

The issue before the Court is whether Chase has properly calculated the amount of the arrears to be paid through Trabal's Chapter 13 plan. To resolve the issue, the Court must apply Bankruptcy Code § 1322(e), which provides:

(e) Not withstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law.

Thus by the terms of the statute, the Court must determine (i) whether the Chase mortgage provides for the charges claimed together with interest and (ii) whether New Jersey law permits the charges and the interest to be included.

■ Counsel for Trabal argues that because the mortgage does not contain a clause or phrase which specifically refers to interest on arrears in a bankruptcy case, the mortgage does not meet the requirements of § 1322(e). The Court finds that Trabal's reading of the statute is unreasonably narrow and does not comport with its underlying purpose.

Section 1322(e) was enacted as part of the Bankruptcy Reform Act of 1994 ("1994 Reform Act"). Pursuant to section 702(b)(2)(D) of the 1994 Reform Act, this amendment to § 1322 was made applicable only to agreements concluded after October 22, 1994, the effective date of the legislation. It is evident from the limited legislative history that exists for the 1994 Reform Act that § 1322(e) was intended to overrule *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). *Rake* held that an over secured creditor is entitled to interest on the arrears and other charges even if the mortgage is silent and state law would not require interest to be paid. As part of the Floor Statements made in connection with the legislation, Representative Jack Brooks stated:

This section will have the effect of overruling the decision of the Supreme Court in *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In that case, the Court held that the Bankruptcy Code required that interest be paid on mortgage arrearages paid by debtors curing defaults on their mortgages. Notwithstanding State law, this case has had the effect of providing a windfall to secured creditors at the ex-

pense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable law prohibits such interest and even when it was something that was not contemplated by either party in the original transaction. This provision will be applicable prospectively only, i.e., it will be applicable to all future contracts, including transactions that refinance existing contracts. It will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall. It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.

H.R. 835, 103rd Cong., 2nd Sess. (1994), 140 Cong. Rec. H10,752 (daily ed. October 4, 1994).

■ Notably, the thrust of the statement by Representative Brooks is that § 1322(e) is intended to leave the parties to the rights provided by their agreements and applicable non-bankruptcy law. Thus, language in the mortgage which identifies the items which are to be considered part of the mortgage debt, and which specifies an interest rate should suffice. Turning to the Chase mortgage, it provides that disbursements made by Chase to protect the property and Chases' rights in the property become part of the mortgage debt and bear interest at the note rate (8.625%). Given the specificity of this language, no additional reference to bankruptcy or bankruptcy arrears is needed to make it evident that as part of its arrearage claim, Chase may include interest on the disbursements it made pursuant to paragraph seven of the mortgage.

Trabal cites *In re Bumgarner*, 225 B.R. 327 (Bankr.D.S.C.1998) in support of the proposition that an agreement must specifically authorize interest on mortgage arrears. In *Bumgarner*, the Court found the contract to be insufficiently specific for a creditor to collect interest pursuant to § 1322(e). Specifically, the Court reasoned that the language in the mortgage that set forth an interest rate of 10.50% per year "until paid in full," and that provided that "interest accrues on the unpaid balances of principal remaining from time to time, until paid in full" did not indicate that interest was required on arrears. *Id.* at 328. Furthermore, it noted that the lender in *Bumgarner*, admitted that the note did not, in any specific terms, require that interest be paid on the cure of any default in bankruptcy, nor that interest be paid on interest. *See id.*

By contrast, the mortgage between Chase and Trabal is significantly more specific than the mortgage in *Bumgarner*. The first page of the mortgage agreement expressly provides for "the payment of all other sums, with interest." Similarly, paragraph seven of the mortgage agreement states that if the mortgagee disburses any amounts to protect the value of the property, these amounts shall become additional security for the outstanding debt and shall bear interest from the date of disbursement. The Court finds these terms to be unambiguous. Thus, *Bumgarner* does not compel the conclusion that this Court should disallow the interest on the advances made by Chase. As long as the mortgage agreement is clear in its terms, the first condition of § 1322(e) is met, and a mortgagee such as Chase can receive interest on arrearages.

The requirement of § 1322(e) that applicable nonbankruptcy law permit the charges and interest is also satisfied. The items of the arrearage claim for pre-petition legal fees, property inspection fees, NSF fees, and escrow advances total $3,524.03. Chase claims that interest should be calculated on these items at the contract rate of 8.625% over five years. This results in additional $826.81 as part of the arrears claim.

### A. Interest on Advances

New Jersey law permits interest on advances to be collected as long as the parties contemplated it in the original agreement and as long as it is not usurious. *See Monmouth Capital Corp. v. Holmdel Village Shops, Inc.,* 92 N.J.Super. 480, 487, 224 A.2d 35, 39 (Ch.Div.1966). In *Scherer v. Bang,* 97 N.J.Eq. 497, 128 A. 258 (N.J. Ct. Err. & App.1925) the Court concluded that even where there was no express provision for interest in the agreement, where one gives a deed for property, takes from the grantee an agreement for reconveyance upon repayment of a sum advanced, and for future sums advanced, interest can be charged upon such advances from the date of default. Accordingly, the second requirement of § 1322 is satisfied with respect to allowing interest on the disbursements made by Chase.

### B. Attorney Fees

Pursuant to Bankruptcy Code § 506, the over secured creditor may recover reasonable costs and expenses, including attorney fees provided for in the loan documents. *See Matter of Ivan H. Bohling,* 222 B.R. 340, 342 (Bankr.D.Neb. 1998). In one analysis of § 1322(e), the Court, after examining the legislative history of the provision, concluded that there was nothing in § 1322(e) to preclude the recovery of attorney fees. *See In re Lake,* 245 B.R. 282, 285 (Bankr.N.D.Ohio 2000). The Court also reasoned that there was no language in § 1322(e)'s legislative history limiting recovery to interest, and that the payment of attorney fees to be included in the amount required to cure a default was not inconsistent with legislative intent. *See id.* at 285. Thus, the attorney fees charged are also allowable.

### C. Taxes

Where taxes on property are the responsibility of the mortgagor, but paid by the mortgagee for the benefit of the mortgaged property, the mortgagee is entitled to be reimbursed for the benefit of the mortgaged property, the mortgagee is entitled to be reimbursed and can add any uncollected monies to the mortgage debt. *See Elmer v. Loper,* 25 N.J.Eq. 475, 1875 WL 6810 (N.J.Ch.1875). The *Elmer* Court ruled that "a mortgagee may pay the tax on the land, and add the amount to his mortgage." *Id.* at 480. In *Clark v. Smith,* 1 N.J.Eq. 121 (N.J.Ch.1830), the Court held that where a mortgagee in possession is necessarily put to expenses in defending or securing the title, he is entitled to an allowance for the expenditure. *See id.* at 122. Guided by the rulings, the Court concludes that the taxes and other disbursements made by Chase are proper charges to be included in Chase's proof of claim.

### CONCLUSION

The mortgage agreement between Chase and Trabal is unambiguous in its terms, and New Jersey state law permits recovery of the interest on the claimed arrearage. Therefore, Chase easily meets the requirements of § 1322(e) and its proof of claim is allowed as requested.