**In re Scott J. KOSTER, Tracy L. Koster, Debtors.**

No. 03–40538–172.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

June 12, 2003.

merits, the motion for summary judgment is overruled because it is now moot.

738

Jerry Hoff, St. Louis, MO, for Debtors.

Stuart J. Radloff, Radloff & Riske, St. Louis, MO, for Fairbanks.

John V. LaBarge, Jr., St. Louis, MO, Chapter 13 Trustee.

*ORDER*

JAMES J. BARTA, Chief Judge.

The matter before the Court is the Objection to Confirmation of the Debtors' Chapter 13 Plan of Reorganization filed by Fairbanks Capital Corp. ("Fairbanks"). Fairbanks has alleged that by underestimating the amount of the arrearage owed to it, and by failing to provide for interest on that portion of the arrearage that represents loan principal, attorney fees, costs, and certain other late charges, the Debtors' proposed plan failed to provide sufficient property to be distributed under the plan to cure the default as required under 11 U.S.C. § 1325(a)(5).

The Debtors have responded that Section 1322(e) does not require them to provide for interest on an arrearage, citing *In re Bumgarner*, 225 B.R. 327 (Bankr.S.C. 1998).

A hearing was held March 20, 2003 after which the Parties submitted legal memoranda.

This is a core proceeding pursuant to Section 157(b)(2)(B) and (L) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 81–9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

The Debtors filed their Chapter 13 petition on January 15, 2003. At the time of filing, the Debtors were delinquent on their mortgage debt to Fairbanks. In the proposed plan, the Debtors estimated the amount of the arrearage to be approximately $3,000.00. The Debtors proposed to cure the default over 36 months at 0% interest.

Fairbanks filed a proof of claim for $75,995.86 as fully secured. In its memorandum, Fairbanks stated that its arrearage claim consists of missed pre-petition

payments representing principal and interest due; attorney fees and costs advanced by Fairbanks ($807.14); late charges ($189.54); additional late charges ($189.54); and additional charges ($208.80). **See Fairbanks Exhibit C, Proof of Claim.** In its objection to confirmation, Fairbanks stated that it had calculated the arrearage at $5,186.12. Fairbanks contended that under the note and deed of trust, interest is to accrue at the rate of 10.15% on the principal amount of the loan until paid. By the terms of the agreement, such interest is to accrue after default. **See Fairbanks' Exhibit B, Note, paragraph 2.** The agreement also permitted Fairbanks to include in the debt amounts advanced by Fairbanks for such items as insurance, taxes, attorney fees and costs and these amounts were to accrue interest. **See Fairbanks' Exhibit A, Deed of Trust, paragraphs 7 & 17.** Fairbanks also alleged that it is owed interest on the "late charges", "additional late charges", and "additional charges" under state law at the rate of 9%. **See Mo.Rev. Stat. § 408.020 (2002).** Fairbanks is expressly not claiming an entitlement to interest on that portion of the arrearage that is the interest component of the missed payments.

■ The issue here is whether, in order to cure a default in a Chapter 13 case under Section 1322(e), a debtor's plan must provide for interest to be included on those portions of an arrearage that are entitled to interest under the terms of the note and deed of trust, where those terms are not otherwise contrary to applicable non-bankruptcy law.

Several subsections of Section 1322 address secured claims, including Section 1322(b)(2) that excepts from modification those claims that are secured only by a security interest in real property that is the debtor's principal residence; Section 1322(b)(3) that states that the plan must provide for the curing or waiving of any default; Section 1322(b)(5) that states that the plan must provide for the cure of any default within a reasonable time; and Section 1322(e), the particular subsection at issue here, which provides that "...if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law." **11 U.S.C. §§ 1322(b) and 1322(e).** In the case before the Court, the pre-petition arrearage consists of missed payments that have principal and interest components; late fees; attorney fees; the costs associated with attempted foreclosure proceedings; and assorted late charges and additional charges.

■ Section 1322(e), applicable to loans made after October 22, 1994, was enacted as part of the Bankruptcy Reform Act of 1994 and was intended to overrule *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In *Rake,* the Supreme Court held that the Bankruptcy Code required that, to cure a pre-petition mortgage default, interest must be paid on the entire mortgage amount of the arrearage. The ruling permitted secured creditors to be paid interest on interest and on late charges, even in those instances where state law did not permit such interest, or where the loan agreements did not provide for such interest. To limit the secured creditor to the benefit of its bargain, Section 1322(e) was added to the Bankruptcy Code in 1994. It conveyed the Congressional intent that a cure in bankruptcy pursuant to a Chapter 13 plan, should put the debtor and the creditor in the same position as was bargained for under the provisions of the parties' agreement and applicable non-bankruptcy law.

■ The analysis of Section 1322(e) is a two part process. First, as a threshold

matter, the amount necessary to cure must be in accordance with the parties' agreement. Second, the amount sought to be included must not otherwise be forbidden by applicable, non-bankruptcy law. Section 1322(e) does not provide for the inclusion of an item in an arrearage claim that would be permitted under applicable non-bankruptcy law that was not included in the underlying agreement. See *In re Hoover*, 254 B.R. 492 (Bankr.N.D.Okla. 2000), (holding that, although applicable non-bankruptcy law would allow interest on unpaid installment arrears, the parties' agreement did not provide for such interest but only provided for a $5.00 fee for each unpaid installment, which could be included in the proof of claim; and that because the agreement provided for interest on money advanced for insurance, and such interest was not otherwise prohibited by non-bankruptcy law, its allowance was not contrary to Section 1322(e)).

Debtors' attorney urges the Court to read the language of Section 1322(e) to mean that no part of the arrearage is entitled to interest. That would be an incorrect reading of the plain language of the statute. The case cited by Debtors, *In re Bumgarner*, 225 B.R. 327 (Bankr.S.C. 1998) holds that, while South Carolina law permits interest on interest when a debtor is in arrears, the loan agreement must also specifically provide for interest on an arrearage in bankruptcy to comply with Section 1322(e). The Court agrees with the ruling by the District Court in the District of New Jersey that the *Bumgarner* reading of Section 1322(e) does not comport with the underlying purpose of the statute. See *In re Trabal*, 254 B.R. 99, 102 (D.N.J. 2000).

■ The Court finds and concludes that the "underlying agreement" referred to in Section 1322(e) does not require language specific to the treatment of interest on an arrearage in a bankruptcy case. Barring applicable non-bankruptcy law to the contrary, language in the note and/or deed of trust which identifies those items that are included in the mortgage debt, and which specifies an interest rate, is sufficient to require the debtor to provide for interest on those portions of the arrearage that are entitled to such treatment in the plan of reorganization or repayment. Such language also permits a secured creditor to file an accurate proof of claim under the terms of the plan. See *Trabal*, 254 B.R. at 101. So long as those items are not otherwise contrary to applicable non-bankruptcy law, they may be included in the arrearage that must be cured in the plan.

■ Upon examination of the underlying agreement of these Parties, the Court has determined that the note and deed of trust in this case have provided for the payment of interest on the principal amount of the loan until paid, and specifically provided for interest on principal after default. **See Fairbanks' Exhibit B, paragraph 2.** The agreement also provided that amounts advanced for items such as insurance, taxes, costs, and attorney fees were to be added to the arrearage debt and accrue interest at the rate in the underlying agreement. **See Fairbanks' Exhibit A, Deed of Trust, paragraphs 6 & 7.** The Parties' underlying agreement does not address interest on "late charges", "additional late charges" and "additional charges". **See Fairbanks' Exhibit B, Note, paragraph 7.**

■ Under applicable non-bankruptcy law, terms in a note and deed of trust that provide for the accrual of interest on an arrearage are not prohibited by Missouri law. The conditions of the parties' performance are determined according to the integral terms of the note and deed of trust. *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo.1999). The note

describes the debt and the terms of repayment, including the conditions of default. The deed of trust creates a lien to secure the terms of repayment of the note to which it refers. The note is the contract and the deed of trust is collateral. *Tipton v. Holt*, 610 S.W.2d 659, 662 (Mo.Ct.App. 1981) (citations omitted). The terms of a note and deed of trust may include provisions for interest on a variety of amounts due under the agreement including advances made by the creditor to protect its rights in property such as insurance, taxes, and attorney fees and costs. See *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d at 780–782 (Mo.1999), *Roberts v. Rider*, 924 S.W.2d 555, 558 (Mo.Ct.App.1996), *Tipton v. Holt*, 610 S.W.2d at 662. Fairbanks is correct in its assertion that, when no other rate is agreed to, Missouri law permits a secured creditor to collect 9% interest on moneys after they become due and payable on written contracts. **Mo.Rev.Stat. § 408.020 (2002).**

Thus, the Debtors' plan must provide for interest on the arrearage per the Parties' agreement as memorialized in the note and deed of trust. In this matter, arrearage items that may accrue interest are the principal component of the missed payments, and the attorney fees and costs advanced by Fairbanks. As discussed above, the underlying agreement between the Parties does not indicate an agreement to pay interest on "late charges", "additional late charges" and "additional charges". Therefore, no plan provision for interest on these items is required to cure the default.

The Court finds and concludes that the Debtors' Plan proposing to pay 0% interest on the arrearage does not cure the pre-petition default in accordance with the underlying agreement and applicable, non-bankruptcy law as provided for by Section 1322(e).

**IT IS ORDERED** that this matter is concluded; and that the Objection to Confirmation filed on behalf of Fairbanks Capital Corp. is **sustained;** and

That the Debtors' Chapter 13 Plan is not confirmed.