In the Matter of BARNETT MARINE, INC., Debtor.

No. 03–10308.

United States Bankruptcy Court, E.D. Louisiana.

March 16, 2006.

Edward H. Arnold, III, Baker Donelson Bearman Caldwell Berkowit, New Orleans, LA, for Kingsley Consulting Group Ltd., Interested Party.

Bernard H. Berins, Heller Draper Hayden Patrick & Horn LLC, New Orleans, LA, Douglas S. Draper, New Orleans, LA, Jan Marie Hayden, New Orleans, LA, John M. Holahan, New Orleans, Clayton T. Hufft, Heller, Draper, Hayden, Patrick & Horn, New Orleans, LA, Stewart F. Peck, New Orleans, LA, Kirk Reasonover, New Orleans, LA, Kenneth L. Roche, III, Assistant Attorney General, Louisiana Department of Justice, Baton Rouge, for Barnett Marine, Inc., Debtor.

Paul E. Bullington, Wall & Bullington, LLC, New Orleans, LA, for Joseph Barnett, Rebecca Barnett, Interested Party.

Elwood F. Cahill, Jr., New Orleans, LA, for Gulf Coast Bank and Trust Company, Associated Pipe Line Contractors, Inc., Creditors.

Kimberly L. Callaway, Louisiana Department of Justice, Public Protection Division, Consumer Protection Section, Baton Rouge, LA, for William B Barnett, Creditor.

Christopher T. Caplinger, New Orleans, LA, for Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, Attorney.

Charles L. Carr, Charles Carr, Attorney at Law, The Woodlands, TX, for Bankruptcy Trading & Investments, L.L.C., Creditor.

Leo D. Congeni, The Law Office of Leo D. Congeni, L.L.C., New Orleans, LA, for Coastal Towing, Inc., Creditor.

Ralph M. Dean, III, Oxford, MS, for U.S. Attorney, Interested Party.

D. Michael Dendy, Gretna, LA, for Daniel V. Ricciardi, Creditor.

John M. Duck, Adams & Reese LLP, New Orleans, LA, for Heller Draper Hayden Patrick & Horn LLC, Attorney.

Elizabeth J. Futrell, New Orleans, LA, Tara G. Richard, Jones, Walker, New Or-

leans, LA, for Committee of Unsecured Creditors, The, Creditor Committee.

Matthew A. Gold, Argo Partners, New York, NY, for Argo Partners, Creditor.

Robert C. Gravolet, New Orleans, LA, for Office of the U.S. Trustee, U.S. Trustee.

Robert M. Hodge, Lafayette, for Louisiana Department of Labor, Office of Regulatory Services, Creditor Pro Se.

Alan H. Katz, New Orleans, LA, for Entergy Arkansas, Inc., Entergy Services, Inc., Creditors.

Kirk A. Kennedy, Bankruptcy Trading & Investments, Dallas, TX, Omer F. Kuebel, III, New Orleans, LA, for Bankruptcy Trading & Investments, L.L.C., Creditor.

Edward F. LeBreton, III, Fowler, Rodriguez & Chalos, New Orleans, LA, William E. Steffes, Steffes Vingiello & McKenzie LLC, Baton Rouge, LA, for William B. Barnett, Creditor.

Leann Opotowsky Moses, Carver, Darden, Norco, for Whitney National Bank, Creditor.

David S. Moyer, Taggart, Morton, et al, New Orleans, LA, for USA Labor Providers and Contractors, Inc., Creditor.

Stephen O. Scandurro, New Orleans, LA, for Daniel V. Ricciardi, Creditor.

Andrea V. Timpa, Schonekas, Winsberg, Evans & McGoey, LLC, New Orleans, LA, for Linda Sharpe, Interested Party.

Richard J. Tomeny, Jr., Metairie, for Industrial Welding Supply Co. of Harvey, Inc., Creditor.

Cherish D. Van Mullem, New Orleans, LA, for Jack M. Alltmont, Spec. Counsel.

Michael L. Vincenzo, New Orleans, LA, for Jo–De Equipment Rental Company, Inc., Creditor.

Herman Wessels, Monroe, LA, for Regions Mortgage, Inc., Creditor.

## MEMORANDUM OPINION

DOUGLAS D. DODD, Bankruptcy Judge.

Whitney National Bank ("Whitney") moved for approval of post-petition attorneys' fees and costs[1] of $352,888.00[2] and $112,639.52, respectively. Debtor Barnett Marine objected[3] on the following grounds: (1) the inapplicability of 11 U.S.C. § 506(b) to post-confirmation fees and costs; (2) *res judicata;* and (3) duplicative and excessive charges.

## I. FACTS

The debtor and Whitney entered into a "Non–Appealable Consent Judgment" (the "Consent Judgment")[4] on November 19, 2002 which settled a state court action between the parties.[5] The total amount of the judgment in principal, fees and interest (through August 21, 2002) was $3,396,221.10.

The debtor filed its chapter 11 petition January 15, 2003. The Court confirmed the debtor's Fourth Amended and Restated Plan of Reorganization with Immaterial Modifications ("the Plan") on April 16, 2004.

---

1. Pleading no. 1047 (motion).

2. Whitney reduced its fees by $695.00 due to entries incorrectly attributed to the debtor's file.

3. Pleading no. 1078 (objection) and no. 1115 (memorandum in support of objection).

4. Debtor's Exhibit 1.

5. *Whitney Nat'l Bank v. Barnett Marine, Inc., et al.,* docket no. 49–285, 25th Judicial District Court for the Parish of Plaquemines, Louisiana.

There is no dispute that Whitney is an over-secured creditor of the debtor.

The confirmed Plan provides in relevant part:

Unless the fees and costs of attorneys for over-secured creditors are agreed to by the Debtor, in order for such fees and costs to become allowed under the provisions of the Bankruptcy Code, and in particular Section 506 thereof, the following procedures shall be followed:

A. In accordance with the provisions of the Bankruptcy Code, and in particular Section 506 thereof, each of [the] over-secured creditors shall file in this Court a motion to have such fees and costs allowed by this Court (a "Fee Motion");

B. A Fee Motion shall be filed by an over-secured creditor no later than twenty (20) days after that over-secured creditor has been paid the full principal and interest on account of such creditor's claim; and

C. This Court after such notice and hearing it deems appropriate shall allow all such fees and costs as is appropriate pursuant to § 506(b) of the Bankruptcy Code.[6]

Whitney has been paid the principal and interest owed to it, from sale proceeds of collateral.

## II. ANALYSIS

### A. Bankruptcy Code section 506 does not Permit Recovery of Post–Confirmation Fees and Costs

■ Bankruptcy Code section 506(b) allows an over-secured creditor to recover post-petition interest to the extent of the value of the collateral, as well as attorneys' fees and costs if they are provided for in the agreement underlying the claim: [7]

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.[8]

The debtor alleges that section 506 does not apply to fees incurred post-confirmation.

In *Rake v. Wade*, 508 U.S. 464, 468, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993), the United States Supreme Court acknowledged that

It is generally recognized that the interest allowed by § 506(b) will accrue until payment of the secured claim or until the effective date of the plan. See 3 COLLIER ON BANKRUPTCY ¶ 506.05, p. 506–43, and n. 5c (15th ed.1993).

The *Rake* court did not specifically address post-confirmation attorneys' fees and costs.[9] However, the Eleventh Circuit ap-

---

**6.** Pleading no. 823, Exhibit A (the confirmed plan), article 3.15; article 5, pp. 29—30.

**7.** 11 U.S.C. § 506(b). *See also*, S.Rep. No. 95–989, 95th Cong.2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5854; 124 Cong. Rec. H11.095 (daily ed. Sept. 28, 1978); S17.411 (daily ed. Oct. 6, 1978).

**8.** 11 U.S.C. § 506(b).

**9.** Debtor's Memorandum in Opposition to Whitney National Bank's Application for Attorney's Fees quotes the Supreme Court as stating, "the rights granted under Section 506(b) are relevant only until confirmation of the plan. . . ." (Pleading 1115, p. 2). However, the Supreme Court actually quoted this

plied the Supreme Court's ruling in *Rake* to deny a creditor its post-confirmation attorneys' fees and costs in *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1339 (11th Cir.2000):

> This court ... can find no basis to distinguish *Rake's* statement that section 506(b) "applies only from the date of filing through the confirmation date," 508 U.S. at 468, 113 S.Ct. at 2190, on the ground that it dealt with interest rather than attorney's fees. *Cf. In re Harko*, 211 B.R. 116, 119 (2d Cir. BAP 1997) ("There is nothing in the language of § 506(b) to suggest that interest, as opposed to fees, costs and charges, should be treated any differently and the majority of courts have so held."). Indeed, a contrary result would be inconsistent with the purpose of section 506(b), which allows oversecured creditors to include post-petition interest and certain fees as part of the secured claim they will receive upon confirmation of the plan. *See In re Delta Resources*, 54 F.3d 722, 729 (11th Cir.1995).

Whitney has cited no authority to the contrary. Accordingly, the Court will deny Whitney's post-confirmation attorneys' fees and costs.

## B. Whitney's Pre-confirmation Fees and Costs

Whitney relies on three different grounds for recovery of its post-petition, pre-confirmation fees and costs in the Barnett bankruptcy:

- The confirmed plan specifically recognized and provided for Whitney's fees and costs;
- its claim for post-petition attorneys' fees is a separate cause of action based on the mortgages and security agreements that secured the various notes, was not extinguished by or merged into the Consent Judgment between Whitney and the debtor in the state court proceeding, and therefore is not barred by *res judicata;* and
- under 11 U.S.C. § 506(b), the bank as an over-secured creditor is entitled to recover its fees and costs from Barnett.

None of these arguments is persuasive.

### (1) Provisions of confirmed plan

■ The confirmed plan contemplated that Whitney would apply for fees, to be allowed only "as is appropriate pursuant to § 506(b) of the Bankruptcy Code." [10] However, the relevant plan provision refers to "over-secured creditors," and not to Whitney specifically. Moreover, no plan provision can be read as the debtor's unconditional commitment to pay the bank's fees. Indeed, plan article 3.15 specifically conditions the debtor's obligation to pay the bank's fees and costs "as [they] may become allowed in accordance with Article 5 of the Plan." Plan article 5 prescribes procedures by which over-secured creditors may recover fees and costs, "unless the fees and costs of attorneys for over-secured creditors are agreed to by the Debtor...." Barnett's opposition to Whitney's fee application makes plain that the debtor

statement from the amicus brief of the United States. Debtor's Memorandum in Opposition also quotes the Supreme Court as stating that " § 506(b) applies only from the date of filing through the confirmation date." (Pleading 1115, p. 2). The omitted language preceding that quote makes clear that the Supreme Court was merely reciting that the petitioners

agreed with the amicus brief of the United States.

10. See footnote 4, above. Whitney's status as an over-secured creditor was not determined until its collateral was sold during the reorganization.

does not agree to Whitney's demand for fees and costs.

### (2) *Res judicata* effect of the Consent Judgment and whether Whitney's post-petition fees are a separate obligation

■ The debtor argues that the Consent Judgment bars Whitney from obtaining attorneys' fees and costs. The Consent Judgment is in favor of Whitney and against the debtor and William Barnett, II on several promissory notes payable to the bank, "plus actual attorneys' fees incurred by Whitney and all costs of this proceeding."[11] Barnett argues that the Consent Judgment precludes Whitney's recovery of any more fees and costs on the basis of *res judicata*. It reasons that the Consent Judgment extinguished future causes of action on Whitney's notes, because they were merged into the judgment.

■ A federal court must give the same preclusive effect to a judgment of a Louisiana state court that a Louisiana state court would give the judgment. *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir.2000). Louisiana R.S. 13:4231 provides for the *res judicata* effect of judgments from Louisiana courts:

[A] valid and final judgment is conclusive between the same parties ... to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

■ Thus, a judgment both extinguishes and merges into the judgment all causes of action that the plaintiff has asserted arising out of the same transactions, and "any subsequent action must be based on the judgment itself." La. R.S.13:4231, comments (a) and (f).[12] The debtor contends this means that Whitney's claim again Barnett for attorneys' fees must be based solely on the Consent Judgment, and argues that the judgment's terms bar Whitney's recovery of attorneys' fees for services incurred after the date of the Consent Judgment. *See Ken Lawler Builders, Inc. v. Delaney*, 840 So.2d 672, 675 (La.App. 2d Cir.2003), *Diamond B Construction Co. v. La. Dept. of Transportation and Development*, 845 So.2d 429, 436 (La.App. 1st Cir.2003), and *Wood v. May*, 658 So.2d 8, 9 (La.App. 4th Cir. 1995), *rev'd on other grounds*, 663 So.2d

---

**11.** Debtor's Exhibit 1, p. 1, ¶¶ 2(a) through (d). The judgment also recognizes the validity of Whitney's mortgages. Paragraphs 3 through 17 of the Consent Judgment all contain the following language, along with a lengthy recital of the various accessory obligations Whitney holds: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Whitney National Bank and against the defendants recognizing, maintaining and enforcing ..." each of the specific accessory obligations.

**12.** The only exceptions to the general *res judicata* rule are found in La. R.S. 13:4232. Of the three exceptions enumerated in R.S. 13:4232, only subsection (3) may be applicable on the facts here. That part of the statute provides that a judgment does not bar a plaintiff from bringing another action "[w]hen the judgment reserved the right of the plaintiff to bring another action." Paragraph 18 of the Consent Judgment does in fact contain a *general* reservation of Whitney's rights: "all rights of Whitney National Bank to and under any and all collateral and security documents securing the indebtedness ... which are not recognized in this proceeding are hereby reserved and Whitney's rights during and/or after this proceeding to seek enforcement of some or all of such collateral and security documents are hereby reserved." However, the language did not specifically reserve Whitney's right to bring a separate action for attorneys' fees incurred after the date of the judgment.

739 (La.1995) (all cases where the courts held that the *res judicata* effect of a prior judgment barred subsequent action for attorneys fees that arose from the same occurrence). Hence, Barnett urges that Whitney cannot recover any fees incurred after November 19, 2002, including fees and costs it incurred after Barnett filed chapter 11. The court concurs.

Moreover, accessory obligations such as the mortgages and security agreements to which Whitney refers, have life only as security for a principal obligation and cease to have effect when the principal obligation is extinguished. *Colonial Bank v. Marina Seafood Market, Inc.,* 425 So.2d 722, 723 (La.1983), citing Louisiana Civil Code articles 3284 and 3285. *See also Thrift Funds Canal, Inc. v. Foy,* 261 La. 573, 260 So.2d 628, 630 (1972) (conventional mortgage, as accessory security device, is founded upon a principal debt and when that debt is extinguished, the mortgage disappears). The accessory obligation represented by a mortgage cannot serve as the basis for a demand separate from the principal obligation. *Colonial Bank,* 425 So.2d. at 724. *See also Li Rocchi v. Keen,* 242 La. 111, 134 So.2d 893, 898 (1961) (a mortgage cannot be the foundation of a demand separate and distinct from the principal obligation it secures); Max Nathan, Jr., *When is a Mortgage "Established"?,* 76 Tul. L.Rev. 483, 487 (December 2001) (noting that La. Civ.Code art. 3282 provides that a mortgage is an accessorial obligation and "[u]nless and until there is an underlying principal obligation, there is no 'debt' for the creditor to enforce.")

Accordingly, even before Whitney's notes were extinguished by and merged into the Consent Judgment, the security agreements and mortgages did not give Whitney an independent basis to recover its post-Consent Judgment attorneys' fees and costs. Whitney cites numerous cases from jurisdictions outside Louisiana, but it points to no Louisiana case to support the proposition that an undertaking in an accessory obligation to pay attorney fees can serve as an independent basis for recovery of fees in the wake of a judgment on a note.

**(3) Application of 11 U.S.C. § 506(b)**

 Bankruptcy Code § 506(b) allows a creditor whose claim is secured by collateral worth more than the debt to recover reasonable attorneys' fees "provided for under the agreement under which [the secured] claim arose." However, Whitney's claim for attorneys' fees and costs during the chapter 11 case arose under the Consent Judgment, and not under the mortgages or security agreements. Thus, Whitney can recover attorneys' fees only if the Consent Judgment so provides.

 Paragraphs 2(a) through (d) of the Consent Judgment award the bank "actual attorneys' fees incurred by Whitney." Whitney argues that this phrase includes fees it incurred both as of the date of the Consent Judgment *and* afterward, through the chapter 11 case. However, a more reasonable construction of the language of paragraphs 2(a) through (d) supports the conclusion that the Consent Judgment allowed Whitney to recover the attorneys' fees it had incurred only prior to and through the date of judgment. Indeed, the costs allowed to Whitney are specifically identified and limited by the language of the Consent Judgment: they comprise "all costs of *this* proceeding." (emphasis supplied). Whitney could have bargained for language in the judgment unambiguously reserving its ability to recover attorneys' fees and costs after the judgment was

signed.[13] It did not. To conclude otherwise would mean that the debtor wrote Whitney a "blank check" for fees, and the Consent Judgment contains no language unambiguously indicating that was the parties' agreement.

Therefore, Whitney's over-secured claim in this bankruptcy includes only the attorneys' fees and costs that Whitney incurred as of the November 19, 2002 Consent Judgment. Specifically, Whitney's claim does not include post-petition attorneys' fees.

## III. CONCLUSION

Whitney's Motion for Approval of Post–Petition Attorneys' Fees and Costs is denied. The debtor's Plan and 11 U.S.C. § 506(b) do not allow Whitney to recover the post-confirmation attorneys' fees it seeks, and the post-petition, pre-confirmation attorneys' fees sought by Whitney were not provided for in the Consent Judgment. Finally, Whitney is not entitled to post-petition, pre-confirmation attorneys' fees and costs under the confirmed Plan or 11 U.S.C. § 506(b).

Because the court is not allowing Whitney's post-petition fees, it does not reach the issue of the reasonableness of Whitney's fee request.

The court will sign an order consistent with this memorandum opinion.

---

**13.** Indeed, the Whitney Commercial Security Agreements, such as that between Barnett Marine and Whitney dated May 4, 1994, specifically allow the bank to recover "in connection with the enforcement of this Agreement ... attorneys' fees and legal expenses ... including attorneys' fees and legal expenses for bankruptcy proceedings ... and any anticipated post-judgment collection services." Exhibit A 10, attached to Whitney's Post–Hearing Brief, Pleading no. 1157.