

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2006

# In Re: Weedling

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4198

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Weedling " (2006). *2006 Decisions.* Paper 228.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/228

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4198

———

IN RE: JAMES E. WEEDLING; DONNA M. WEEDLING;
ROBERT E. WEEDLING; LYNNE K. WEEDLING,
<u>Debtors</u>

JAMES E. WEEDLING; DONNA M. WEEDLING;
ROBERT E. WEEDLING; LYNNE K. WEEDLING,
<u>Appellants</u>

v.

PNC BANK

FREDERIC R. BAKER, ESQUIRE,
<u>Trustee</u>

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-06721)
District Judge: Honorable John P. Fullam

———

No. 04-4239

———

IN RE: JAMES E. WEEDLING; DONNA M. WEEDLING;
ROBERT E. WEEDLING; LYNNE K. WEEDLING,
<u>Debtors</u>

PNC BANK,
<u>Appellant</u>

v.

JAMES E. WEEDLING; DONNA M. WEEDLING;
ROBERT E. WEEDLING; LYNNE K. WEEDLING,

FREDERIC R. BAKER, ESQUIRE,
Trustee

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-06722)
District Judge: Honorable John P. Fullam

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2006

Before: SLOVITER, CHAGARES and NYGAARD, Circuit Judges

(Filed: November 8, 2006)

OPINION

SLOVITER, Circuit Judge.

Appellants are Robert E. and Lynne K. Weedling ("Robert and Lynne") and their

son, James E. Weedling, and his wife, Donna M. Weedling ("James and Donna"),

collectively, the "Weedlings." They appeal the Order of the District Court affirming the

Bankruptcy Court's finding that the Weedlings were equally at fault in perpetuating the

impasse over payment to PNC Bank, N.A. ("PNC") under the Amended Plan of

Bankruptcy (the "Amended Plan"). Additionally, the Court also found that PNC was not

2

the proximate cause for any losses that the Weedlings may have suffered on the sale of their business.[1]  PNC cross-appeals on the failure to enter judgment for it for attorneys' fees.

## I.

All of the Weedlings live in Lehigh County.  In 1992, Robert, Lynne, and Lehigh Consolidated Industries, Inc. ("LCI"), which Robert owned and founded, filed for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code.  James and Donna were not parties to the bankruptcy proceeding but rather were guarantors of certain indebtedness owed by LCI.  At the time of filing, PNC was the principal secured creditor of Robert and Lynne with respect to a $2,000,000 Promissory Note and accompanying Mortgage on Robert and Lynne's residence, and of James and Donna with respect to a $300,000 Promissory Note and accompanying Mortgage on James and Donna's residence.

In February 1993, PNC filed a motion to convert the case from Chapter 11 to Chapter 7.  The parties reached a resolution, which was then implemented in the form of an Order of the Bankruptcy Court entered August 11, 1993.  The Order reduced Robert and Lynne's outstanding liability to PNC from $2,000,000, plus interest, costs and

---

[1]  The Weedlings refer to the business as Gateway, see, e.g., Appellant's Br. at 27, whereas PNC refers to it as Gateco, see, e.g., Appellee's Br. at 35.  Throughout the Opinion we will refer to the business as Gateway.

3

attorneys' fees, and James and Donna's outstanding liability from $288,736.88, plus interest, costs, and attorneys' fees to the aggregate principal amount of $130,000.

Robert and Lynne filed an Amended Plan that was confirmed by the Bankruptcy Court in 1996. The Amended Plan gave PNC secured liens on the two properties limited to the principal sum of $130,000 to be amortized over a twenty-year period. The liens were to be secured by two new mortgages with the same existing lien priority. The problem that is the subject of this appeal arose because none of the parties ever executed new documents, i.e., new mortgage documents and notes, effectuating the provisions of the Amended Plan.

In August 1998, Robert and Lynne filed an action in the Court of Common Pleas of Northampton County, Pennsylvania against PNC to compel PNC to live up to the terms of the Amended Plan. In May 1999, that court dismissed the Complaint for lack of jurisdiction. In August 1999, PNC sent notices to the Weedlings informing them of PNC's intention to collect the outstanding debt. The Weedlings then filed a motion with the Bankruptcy Court to reopen the case and commence an adversary proceeding. The Bankruptcy Court found that "(a) no actions on the part of [PNC] constituted the proximate cause of any alleged loss to [the Weedlings]; and (b) [the Weedlings] were at least equally at fault in perpetuating the impasse following entry . . . of [the] Order confirming . . . [the] Amended Plan on March 26, 1996." App. at 11a. The parties cross-appealed to the District Court, which affirmed the order of the Bankruptcy Court. The

4

parties then cross-appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 158(d) (2000).

## II.

The Weedlings present four arguments on appeal. First, the Weedlings claim that the District Court erred by finding that they were at least equally at fault in failing to provide the mortgage documents and pay the note under the Amended Plan. Despite the approval of the Amended Plan in 1996, the parties quickly thereafter reached an impasse on the issue of who was responsible for providing the necessary documentation. The Weedlings aver that they made "extensive efforts, both on their own and through their legal counsel, to obtain the necessary information from the bank in order to make payments pursuant to the terms of the Amended Plan." Appellant's Br. at 18. They point to the fact that after the confirmation of the Amended Plan, PNC's lawyer at the time, Bruce Grohsgal ("Grohsgal"), wrote a letter to Judge Gardner of the Court of Common Pleas of Lehigh County informing the latter that the foreclosure matter had settled "subject to execution of mortgage modification documents restructuring the mortgage." App. at 96a.

The Weedlings rely on two letters in support of their claim. The first, dated May 20, 1996, from Attorney David Eisenberg ("Eisenberg"), the Weedlings' representative, to Grohsgal, stated, "[Y]our client has not provided [Robert] with a billing statement for the mortgage payment . . . . Accordingly [Robert] is unable to pay the mortgage payment

5

because he has no possible way of computing it. Please make certain that regular billings are made to the Weedlings as interest is adjusted monthly." App. at 95a. The second, dated July 9, 1996 from Grohsgal to Michael A. Valerio, Jr., PNC's representative, states, "I still need the accrued interest information and the forms of residential note and mortgage that you desire to utilize for the $130,000 mortgage note secured by [Robert and Lynne's] and [James and Donna's] homes." App. at 99a.

The Weedlings' evidence notwithstanding, the District Court properly concluded that the parties were equally at fault with respect to the failure to come up with the necessary documentation to effectuate the Amended Plan. The Amended Plan contained no provision requiring either party to calculate the amount due and owing on the $130,000 lien secured by PNC. It only stated, "PNC . . . shall have its secured liens in the [Weedlings'] properties . . . limited to $130,000. . . . This shall replace all secured liens of PNC . . . against [Robert and Lynne's] residence and the residence of James and Donna . . . ; however, that property shall remain as additional collateral for the obligation to PNC . . . as modified in the Plan." App. at 77a. PNC's attorney, Grohsgal, testified that in his view, it was the Weedlings' obligation to prepare the necessary documentation. In addition, Eisenberg admitted that he had the "necessary legal talent" to prepare the documentation, but stated that he was not asked to do so. App. at 33a. Lastly, the Weedlings' claim that they undertook extensive efforts to contact PNC is belied by the record.

6

Second, the Weedlings argue that the District Court should have interpreted the Amended Plan according to contract principles; PNC agrees. However, treating the Amended Plan as a contract does not help resolve this dispute – the question is what was the parties' objectively-manifested intent with respect to the provision of the necessary documentation. Because the Amended Plan was silent on that point, treating it as a contract does not resolve the question of what the parties intended.

In the alternative, the Weedlings argue that PNC prevented their performance under the Amended Plan because PNC failed to provide them with the information necessary to make payments. In support of this argument they cite Liddle v. Scholze, 768 A.2d 1183 (Pa. Super. Ct. 2001). Liddle is inapposite. Liddle paid $48,000 to Scholze for two breeding emus. Id. at 1184. Because the parties recognized the distinct possibility of infertility, the contract provided that if the emus did not breed, then Scholze was to buy the emus from Liddle "for the amount paid in emu chicks from [Scholze's] own breeders." Id. Liddle's emus produced no chicks. Pursuant to the agreement, Scholze offered Liddle a dozen chicks for $48,000. Liddle declined the offer, hoping that the emus would breed the next year – they did not. Liddle then sought return of her money. Scholze refused. The Court held that "once Scholze offered to fulfill her duties under [the contract], there was no lack of performance. Conduct of one party that prevents the other from performing is an excuse for nonperformance. By preventing Scholze's performance, Liddle excuse[d] it." Id. at 1185 (internal citations omitted).

7

*Liddle* only stands for the proposition that a party cannot prevail for nonperformance if she alone is responsible for the nonperformance. The Amended Plan is not clear on that point; therefore, *Liddle* is not instructive.

The Weedlings next argue that their nonperformance should be excused due to frustration of purpose. They cite to *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 102 (3d Cir. 1986) (citing Restatement (Second) of Contracts § 265 (1979)), for an explanation of frustration of purpose. "Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary." *Id.* Again, the contract in this case, i.e., the Amended Plan, did not speak to the question of who was responsible for providing the necessary documentation. As such, the concept of frustration of purpose is not relevant. In any event, we view the opinions of both the Bankruptcy Court and the District Court as treating the Amended Plan as a contract.

Third, the Weedlings contend that in light of the District Court's finding that the parties were equally at fault, it was error for the District Court to order that the terms of the Amended Plan be effectuated. Simply put, the Weedlings argue that they should not have to pay the full amount that they were obligated to pay under the terms of the Amended Plan. They cite to *Turner v. Mellon Mortgage Co. (In re Turner)*, 221 B.R. 920

8

(Bankr. M.D. Fl. 1998). Like their other cited cases, <u>Turner</u> provides no support for their argument. The <u>Turner</u> court held that because the defendant caused the mortgage payment deficiency, the plaintiff was entitled to recover damages in the amount necessary to make the account current. <u>Id.</u> at 925-26. In the instant matter, the underlying issue is which party is responsible for the mortgage payment deficiency. Because the Weedlings cannot demonstrate that PNC was the responsible party, <u>Turner</u> offers them no help.

Fourth, the Weedlings challenge the District Court's finding that no action on the part of PNC was the proximate cause of loss to the Weedlings. The Weedlings' claim is that their business, Gateway, was undercapitalized, and thus undervalued, because the substantial real estate liens on their respective homes prevented them from obtaining financing. The Weedlings eventually sold the business to Lawrence McEnroe, who testified at trial that the company would have been worth an additional $400,000 to $600,000 had it not been undercapitalized. However, as PNC points out, although the mortgage documents stated that there was a $2,000,000 lien on Robert and Lynne's residence and a $300,000 lien on James and Donna's residence, the Amended Plan clearly reduced those amounts to $130,000 total. The Amended Plan trumped the face amount of the mortgages and any creditor would know that the Weedlings' obligation to PNC was only $130,000. Finally, when one financial institution, Ambassador Bank, was willing to make a loan to the Weedlings for Gateway, Lynne refused to sign a new mortgage on the joint residence. Therefore, the District Court properly found that any damages that the

9

Weedlings suffered on the sale of Gateway were not proximately caused by inactivity, if there was any, on PNC's part.  We see no error in the District Court's decision.

### III.

PNC argues that it is entitled to its attorneys' fees pursuant to §506(b) of the Bankruptcy Code, which provides that:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C.A. § 506(b) (West 2006).  Bankruptcy courts in the Eastern District of Pennsylvania applying this section have noted that to fall within this section, the secured creditor must be (1) oversecured[2] and the charges must be (2) provided for in the agreement under which such claim arose (here the mortgage documents), (3) reasonable, and (4) permitted under law.  See In re Nunez, 317 B.R. 666, 668 (Bankr. E.D. Pa. 2004).  However, § 506(b) does not apply to fees arising post-confirmation.  In Rake v. Wade, 508 U.S. 464, 468 (1993), the Supreme Court stated that § 506(b) "applies only from the date of filing [of the bankruptcy petition] through the confirmation date [of the Plan]."

---

[2]  "An oversecured creditor is a secured creditor whose collateral is worth more than the amount of the debt to it."  Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.), 54 F.3d 722, 724 n.1 (11th Cir. 1995).

10

The attorneys' fees at issue here arose in the context of the adversary proceeding that forms the basis of these appeals. Attorneys' fees arising post-confirmation are not governed by §506(b), but rather by the mortgage document itself.

Nevertheless, whether § 506(b) applies is immaterial because the language in the mortgage documents states that, "[i]n the event that Mortgagee retains an attorney to institute an action on the said Note/Guarantee or to foreclose on this Mortgage," then the Weedlings are required to pay attorneys' fees. App. at 37a-38a. The mortgagee, PNC, did not *institute* this action, nor did it foreclose on the mortgage. The Weedlings commenced this adversary proceeding. Therefore, regardless of the application of § 506(b), PNC's claim would fail under the second element of the § 506(b) calculus because the mortgage document itself prevents collection of attorneys' fees.

Finally, PNC argues that it is entitled to attorneys' fees pursuant to the Stipulation Agreement which the parties entered into in August 2003, after the trial, but before the Bankruptcy Court issued its decision. The Stipulation Agreement stated, "[b]oth parties reserve the right to petition for legal fees at the conclusion of this case." Appellee's App. at 2b, ¶ 3. PNC argues that the Bankruptcy Court was required to enforce the terms of the Stipulation Agreement; according to PNC this means that the Bankruptcy Court was required to *award* attorneys' fees to it. However, PNC never filed a petition for attorneys' fees in the Bankruptcy Court and the decision to grant or deny the petition was solely in the province of that Court. Therefore, the Bankruptcy Court's November 6,

11

2003 Order, finding that "each party shall bear their/its own costs and counsel fees herein," App. at 11, was entirely appropriate.

For these reasons the District Court's judgment will be affirmed.