Dissent by Judge BERZON
OPINION
MURGUIA, Circuit Judge:
In loan agreements—and any subsequent bankruptcy proceedings—a borrower “defaults” on a loan when he fails to fulfill a material obligation under the terms of the loan agreement, such as making a payment by a particular date. A default can trigger certain consequences, such as foreclosure on any property securing the loan, late fees and penalties, or “acceleration,” which occurs when the entire unpaid amount of the loan becomes immediately due and payable. But the borrower can also “cure” the default, most often by paying the arrearages and bringing the loan current. A cure generally allows the borrower to avoid the consequences of default, restores the loan to its original terms, and allows the borrower to keep the property.
The Bankruptcy Code incorporates the concept of cure. Chapter 11 provides that a debtor’s plan of reorganization must “provide adequate means for the plan’s implementation,” including the “curing or waiving of any default.” 11 U.S.C. *1137 § 1123(a)(5)(G). This statute means that a plan of reorganization may include a provision authorizing the debtor to remedy any breach of a loan agreement with a creditor and return to pre-default conditions. Great W. Bank & Tr. v. Entz-White Lumber & Supply, Inc. (In re Entz-White Lumber & Supply, Inc.), 850 F.2d 1338, 1340 (9th Cir. 1988).
We held in Entz-White that a debtor who cures a default “is entitled to avoid all consequences of the default—including higher post-default interest rates.” Id. at 1342. In other words, if a loan agreement provided for a higher, post-default interest rate on arrearages in the event of default, a debtor who “cures” is entitled to repay, the arrearages at the lower, pre-default interest rate. We concluded that “the power to cure under the Bankruptcy Code authorizes a plan to nullify all consequences of default, including avoidance of default penalties such as higher interest,” even when the terms of the loan agreement called for a higher interest rate upon default. Id.
The case before us requires us to decide whether Entz-White ⅛ rule that a debtor may nullify a loan agreement’s requirement of post-default interest remains good law in light of 11 U.S.C. § 1123(d), a provision that Congress enacted after Entz-White. Section 1123(d) provides that, if a plan proposes to cure a default, “the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law.” 11 U.S.C. § 1123(d). We hold that Entz-White ’s rule of allowing a curing debtor to avoid a contractual post-default interest rate in a loan agreement is no longer valid in light of § 1123(d).
I.
New Investments, Inc. (“New Investments”) borrowed $3,045,760.51 from Paci-fica L 51, LLC’s (“Pacifica”) predecessor in interest to purchase a hotel property in Kirkland, Washington. The note, which was secured by a deed of trust, provided for an interest rate of 8 percent. The note also specifically provided that in the' event of default, the interest rate would increase by 5 percent.
New Investments defaulted on the note in 2009. When Pacifica commenced nonjudicial foreclosure proceedings, New Investments filed for Chapter 11 bankruptcy. New Investments’s plan of reorganization proposed to cure the default by selling the property to a third party and using the proceeds of the sale to pay the outstanding amount of the loan at the pre-default interest rate. Pacifica objected to the plan on the ground that, under the terms of the note, it was entitled to be paid at the higher, post-default interest-rate.
The bankruptcy court confirmed New Investments’s plan over Pacifica’s objection and authorized the sale of the hotel for $6,890,000. Of the sale proceeds, $2,830,877.28 would be paid to Pacifica, reflecting the pre-default interest rate and extinguishing any other late penalties. Anticipating an appeal, the bankruptcy court ordered that $100,000 of the proceeds be reserved for Pacifica’s attorney’s fees on appeal and that $670,000 be set aside as a disputed claim reserve for Pacifica. Pacifi-ca timely appeals from the confirmation order.
II.
We have jurisdiction under 28 U.S.C. § 158(d), and we review the bankruptcy court’s interpretation of bankruptcy statutes de novo. Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009). “When construing the meaning of a statute, we begin with the language of that statute.” Benko v. Quality Loan Serv. Corp., 789 F.3d 1111, 1118 (9th Cir. 2015). “If the statutory text is ambigú *1138 ous, we employ other tools, such as legislative history, to construe, the meaning of ambiguous terms.” Id. “A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change.” Green v. Bock Laundry Mach. Co,, 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989).
III.
Chapter 11 of the Bankruptcy Code provides that a plan of reorganization must, among other things, “provide adequate' means for the plan’s implementation,” including the “curing or waiving of any default.” 11 U.S.C. § 1123(a)(5)(G). In Entz-White, we observed that the Bankruptcy Code did not define “cure.” 850 F.2d at 1340. We borrowed the Second Circuit’s definition: “A default is an event in the debtoi’-creditor relationship which triggers certain consequences. Curing a default commonly means taking care of the triggering event and returning to pre-de-fault conditions. The consequences are thus nullified. This is the concept of ‘cure’ used throughout the Bankruptcy Code.” Id. (alteration omitted) (quoting Di Pierro v. Taddeo (In re Taddeo), 685 F.2d 24, 26-27 (2d Cir. 1982)). We held that “the power to cure under the Bankruptcy Code authorizes a plan to nullify all consequences of default, including avoidance of default penalties such as higher interest.” Id. at 1342. As a result, a debtor whose plan proposed to cure a default would allow him to avoid having to pay a higher, post-default interest rate called for in the loan agreement.
Entz-White was decided in 1988. In 1994, Congress amended § 1123 to add subsection (d). Pub. L. No. 103-394, Title II, § 305, Oct. 22, 1994, 108 Stat. 4106. Subsection (d) provides:
Notwithstanding subsection (a) of this section and sections 506(b), 1129(a)(7), and 1129(b) of this title, if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law.
11 U.S.C. § 1123(d).
Subsection § 1123(d) renders void Entz-White ’s rule that a debtor who proposes to cure a default may avoid a higher, post-default interest rate in a loan agreement. Subsection (d) governs here because New Investments’s plan proposes to cure a default. The underlying agreement—here, the promissory note—requires the payment of a higher interest rate upon default. And “applicable nonbankruptcy law”—here, Washington state law—allows for a higher interest rate upon default when provided for in the loan agreement.[1] See Wash. Rev. Code Ann. § 61.24.090(l)(a) (providing that a borrower may cure a monetary default by paying the trustee “[t]he entire amount then due under the terms of the deed of trust and the obligation secured thereby, other than such portion of the principal as would not then be due had no default occurred”). In other words, under § 1123(d), “the amount necessary to cure [New Investments’s] default” is governed by the deed of trust and Washington law, which respectively require and permit repayment at a higher, post-default interest rate.
*1139 The plain language of § 1123(d) compels the holding that a debtor cannot nullify a preexisting obligation in a loan agreement to pay post-default interest solely by proposing a cure. But even if we were to. read ambiguity into the statute, the legislative history would not help New Investments. The House Report for the bill that became § 1123(d) states that Congress was primarily concerned with overruling the Supreme Court’s decision in Rake v. Wade, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). H.R. Rep. No. 103-835, at *55 (1994). Rake had held that a Chapter 13 debtor who proposed to cure a default was required to pay interest on his arrearages to a secured creditor even if the underlying loan agreement did not provide for such interest. 508 U.S. at 472, 113 S.Ct. 2187. Congress viewed this as an untoward result that allowed for “interest on interest payments” and provided an unbargained-for windfall to creditors. H.R. Rep. No. 103-835, at *55. The House Report states that-§ 1123(d) would “limit the secured creditor to the benefit of the initial bargain with no court contrived windfall.” Id. It further stated that it was “the Committee’s intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.” Id.
The fact that Congress had a particular purpose in mind when enacting a statute does not limit the effect of the statute’s text, a principle Entz-White' itself recognized. See 850 F.2d at 1341 (noting that a Senate Report for the bill that became 11 U.S.C. § 1124 showed “only that the drafters in the Senate were concerned primarily with defaults resulting in acceleration; it does not show that they meant to confine the section to that situation”). Rather, “[t]he fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning.” Union Bank v. Wolas, 502 U.S. 151, 158, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). By its terms, § 1123(d) tells us to look to the promissory note and Washington law to determine what amount New Investments must pay to cure its default. Here, that analysis requires the payment of post-default interest. ,
This result is further consistent with the intent of § 1123(d) because it holds the parties to the benefit of their bargain. Moreover, the House Report’s statement “that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred” is consistent with the concept of cure generally, which § 1123(d) has not altered or attempted to define. See Taddeo, 685 F.2d at 26-27 (“Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified.”).
What § 1123(d) affects is hoio a debtor returns to pre-default conditions, which can include returning to a lower, pre-default interest rate. In the traditional case, a borrower who has defaulted on a loan obligation can cure the default by paying arrearages. See Restatement (Third) of Property (Mortgages) § 8.1(b) <& cmt. c (1997); Wash. Rev. Code Ann. § 61.24.090(a)(1). This procedure allows the borrower to avoid acceleration or foreclosure, which are some of the more common consequences of default. See Restatement (Third) of Property (Mortgages) § 8.1(a); Wash. Rev. .. Code Ann. § 61.24.090(a). However, the borrower does not effectuate a cure merely by paying past due installments of principal at the pre-default interest rate. Rather, the borrower’s cure obligations, may also include “late charges, attorneys’ and trustee’s fees, and publication, and court costs.” Restatement (Third) of Property (Mort *1140 gages) § 8.1 cmt. c; see also Wash. Rev. Code Ann. § 61.24.090(l)(b). It is only once these penalties are paid that the debtor can return to pre-default conditions as to the remainder of the loan obligation.
The common law treatment of cure is consistent with the Bankruptcy Code’s protections for creditors who would have been'entitled to receive accelerated payment on a defaulted loan. For a debtor to render such a creditor. “unimpaired” and unable to object to the debtor’s plan, Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1075 (9th Cir. 2002); 11 U.S.C. § 1126(f), the debtor must cure the default but may not “otherwise alter the legal, equitable, or contractual rights” of the creditor, 11 U.S.C. § 1124(2)(E). Here, one of those rights is post-default interest, and New Investments’s cure may not alter that right.
Consistent with § 1124(2), the debtor can return to pre-default, conditions, which can include a lower, pre-default interest rate, only by fulfilling the obligations of the underlying loan agreement and applicable state law. 11 U.S.C. § 1123(d). By its terms, § 1123(d) requires that we look to the “underlying agreement,” not only to the “pre-default interest provisions” of the underlying agreement. To read any such limitation into § 1123(d) would be “to add specific language that Congress did not include in a carefully considered statute.” Illinois v. Abbott & Assocs., Inc., 460 U.S. 557, 572, 103 S.Ct. 1356, 75 L.Ed.2d 281, (1983); see also United States v. Plaza Health Labs., Inc., 3 F.3d 643, 649 (2d Cir. 1993) (“[W]e cannot add to the statute what congress did not provide.”). Here, the note provided that upon default, the interest rate on the loan would increase by 5 percent. Unfortunately for New Investments, the increased interest rate applies to the entirety of the note and not just to arrearages.
We are mindful that “[t]he principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor.” Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (internal quotation marks omitted). And Congress wanted to protect debtors against unbar-gained-for interest requirements in enacting. § 1123(d). But the Bankruptcy Code is not a purely remedial statute. Fla. Dep’t of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 51, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008). “Rather, Chapter 11 strikes a balance between a debtor’s interest in reorganizing and restructuring its debts and the creditors’ interest in maximizing the value of the bankruptcy estate.” Id. If the loan agreement did not require a higher, post-default interest rate, New Investments would not have to pay it. However, today’s result holds New Investments to its bargain by adhering to the terms of its loan agreement with Pacifica, as required by § 1123(d).
Both the text and the legislative history of § 1123(d) make clear that the provision was intended to limit parties to the benefit of their bargain when a debtor seeks to effectuate a cure and return to pre-default conditions. The parties bargained for a higher interest rate on the note in the event of default, and Pacifica is entitled to the benefit of that bargain under the terms of§ 1123(d).
IV.
We conclude that Pacifica is entitled to receive payment of the loan at the post-default interest rate. We therefore reverse the decision of the bankruptcy court and remand for further proceedings.
REVERSED and REMANDED.

. We reject New Investments's argument that Washington's deed of trust law cannot constitute "applicable nonbankruptcy law” under § 1123(d) because the Bankruptcy Code’s automatic stay would prevent foreclosure under Washington law. See . 11 U.S.C. § 362(a); Wash. Rev. Code Ann. § 61.24.040. This reading would render the phrase "applicable non-bankruptcy law” meaningless because the automatic stay would always trump state law foreclosure provisions, contrary to the statutory text and intent.